IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

ROBERT L. BOYD,               §
                                     §
     Plaintiff,              §
                                     §
v.                             §      2:21-CV-95-Z-BR
                                   §
CANADIAN INDEPENDENT SCHOOL  §
DISTRICT,                  §
                                   §
     Defendant.            §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND DENY AS MOOT MOTION FOR JOINDER OF PARTIES BY PLAINTIFF

Before the Court is Defendant Canadian Independent School District's Motion to Dismiss Amended Complaint. (ECF 28). By that motion, Defendant moves to dismiss Plaintiff Robert L. Boyd's Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*Id.* at 1; *see* ECF 27). Having considered the motion, the undersigned United States Magistrate Judge recommends Defendant's Motion to Dismiss be GRANTED. Additionally, the undersigned recommends the Motion for Joinder of Parties by Plaintiff (ECF 37) be DENIED as moot.

## I.    BACKGROUND

Plaintiff alleges in his Amended Complaint that, sometime prior to August 29, 2019, he posted on social media while "on the [c]lock" working for Defendant. (ECF 27 at 2). The Court takes judicial notice that Plaintiff's social media post regarded an interview with Penny Brown, an employee of Defendant and the mother of a missing child, Thomas Brown. (*Id.*; ECF 29 at 6 n.3); *see* Fed. R. Evid. 201. On August 29, 2019, Defendant's Superintendent, Lynn Pulliam, reprimanded Plaintiff for the timing and nature of his social media post. (ECF 27 at 2). Plaintiff

alleges that he had another meeting with Superintendent Pulliam about not "comment[ing] on the subject anymore at all." (*Id.*). On November 11, 2019, Plaintiff was terminated for posting, not during working hours, on social media: "I've heard [Penny Brown's husband] beat Tom the night before [he disappeared]." (*Id.* at 2, 4; ECF 29 at 29).

Plaintiff asserts that other employees of Defendant use social media during work hours but have not been "written up." (ECF 27 at 2). Plaintiff further asserts that an "individual," presumed by Defendant to be Penny Brown, was not reprimanded for also posting on social media, as well as doing a radio interview about the disappearance and death of Thomas Brown, discussing the issue on her cell phone while in her classroom, and "dress[ing] up as the person she believed had involvement in" Thomas Brown's disappearance on Halloween; instead, she only "got a little talk" for these alleged actions. (*Id.* at 2–5).

Plaintiff filed his original Complaint (ECF 3) on May 21, 2021, as well as a Questionnaire (ECF 8) on June 29, 2021, in response to the Court's Briefing Order (ECF 7). Pursuant to the Court's Order Requiring Plaintiff to File First Amended Complaint (ECF 26), Plaintiff filed an Amended Complaint (ECF 27) on October 7, 2021. Defendant filed a Motion to Dismiss Amended Complaint (ECF 28) and Brief (ECF 29) and also an Answer to Amended Complaint and Jury Demand (ECF 30) on October 21, 2021. Plaintiff filed a Response to Defendant's Motion to Dismiss (ECF 34), and Defendant filed a Reply to Plaintiff's Response (ECF 35).

## II.   LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12. In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th

Cir. 2007) (internal quotation marks and citation omitted). Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*.(quoting *Twombly*, 550 U.S. at 555–56). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2)'s pleading standard does not require detailed factual allegations, it demands more than labels and conclusions. *See Iqbal*, 556 U.S. at 678. While a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *see Ruiz v. Brennan*, 851 F.3d 464, 471 n.5 (5th Cir. 2017) ("However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'") (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Iqbal*, 556 U.S. at 678. Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted); *see Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at any stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion.") (citations omitted).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting Fed. R. Civ. P. 10(c); citations omitted)). Further, "[w]hen an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim."

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). While

the United States Court of Appeals for the Fifth Circuit:

> has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim.

*Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a

document referenced in the plaintiff's complaint is merely evidence of an element of the

plaintiff's claim, then the court may not incorporate it into the complaint." *Id.* If "matters

outside the pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56," which requires the parties "be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ.

P. 12(d); *see Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Finally, a plaintiff may not amend his allegations through a response to a motion to

dismiss. "[A] claim for relief" must be made through a pleading, Fed. R. Civ. P. 8(a), and a

response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules

of Civil Procedure, Fed. R. Civ. P. 7(a); *see, e.g., Klaizner v. Countrywide Fin.*, No. 2:14-CV-

1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief

must be contained in a pleading. A response to a motion is not a pleading and it is improper

for the court to consider causes of action not contained in the pleadings." (citations omitted)).

### III.    ANALYSIS

As a preliminary matter, the Court agrees with Defendant that, while Plaintiff has alleged

a violation of his rights to free speech under the First Amendment in his Amended Complaint,

Plaintiff does not appear to allege a sex discrimination claim. (*See* ECF 27 at 2–5; ECF 28 at 1; ECF 29 at 5–6). However, due to Plaintiff's *pro se* status, the Court will liberally construe his Amended Complaint and assume the Plaintiff intended to include the sex discrimination claim alleged in his original Complaint[1] in his Amended Complaint. (*See* ECF 3 at 1). *See Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) ("A *pro se* complaint is to be construed liberally with all well-pleaded allegations taken as true.").

### A. Plaintiff's Sex Discrimination Claim Should Be Dismissed

### 1. Plaintiff Failed to Timely File His EEOC Charge of Discrimination

As recently noted by the Supreme Court, employees must adhere to certain filing requirements in order for their Title VII claims to be administratively exhausted—a prerequisite to having an actionable claim in federal court:

> Title VII directs that a charge shall be filed with the EEOC by or on behalf of a person claiming to be aggrieved within 180 days after the alleged unlawful employment practice occurs. For complaints concerning a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered to grant or seek relief, Title VII instructs the complainant to file her charge first with the state or local agency. The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, whichever is earlier, to file a charge with the EEOC. If the state or local agency has a worksharing agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other.

*Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (internal quotation marks, citations, and alterations omitted). The Texas Workforce Commission has a worksharing agreement with the EEOC. *See* Tex. Admin. Code § 819.76. "It therefore follows that a plaintiff filing a complaint regarding an employment practice occurring in Texas has 300 days to file a charge with the EEOC

---

[1] Plaintiff's original Complaint included the sentence: "I believe [I] was wrongfully terminated due to Sex Discrimination by Disparent [sic] Treatment, and my 1st Amendment right was being sieged upon." (ECF 3 at 1).

under Title VII[.]" *Garcia v. City of Amarillo*, No. 2:18-CV-95-Z-BR, 2020 WL 4208060, at *3

(N.D. Tex. July 22, 2020), *aff'd*, 836 F. App'x 318 (5th Cir. 2021); *see* 42 U.S.C. § 2000e-5(e)(1).

The 300-day filing requirement was intended by Congress to act as a statute of limitations.

*See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 395 n.12 (1982) (noting "that Congress

intended the filing period to operate as a statute of limitations instead of a jurisdictional

requirement" and "references to the filing requirement as a statute of limitations have come to

dominate in [Supreme Court] opinions"). In *National Railroad Passenger Corporation v. Morgan*,

the Supreme Court examined "whether acts that fall outside of the statutory time period for filing

charges set forth in 42 U.S.C. § 2000e–5(e) are actionable under Title VII." 536 U.S. 101, 108

(2002). The Court held that Title VII "precludes recovery for discrete acts of discrimination or

retaliation that occur outside the statutory time period." *Id.* at 105.

> When the EEOC receives a charge, . . . it does not adjudicate the claim. Instead,
> Title VII calls for the following course. Upon receiving a charge, the EEOC notifies
> the employer and investigates the allegations. If the Commission finds reasonable
> cause to believe the charge is true, the Act instructs the Commission to endeavor to
> eliminate the alleged unlawful employment practice by informal methods of
> conference, conciliation, and persuasion. When informal methods do not resolve
> the charge, the EEOC has first option to bring a civil action against the employer
> in court.
> . . .
> In the event that the EEOC determines there is no reasonable cause to believe that
> the charge is true, the Commission is to dismiss the charge and notify the
> complainant of his or her right to sue in court. Whether or not the EEOC acts on
> the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the
> charge is filed. And within 90 days following such notice, the complainant may
> commence a civil action against the allegedly offending employer.

*Fort Bend Cty.*, 139 S. Ct. at 1846–47 (internal quotation marks, citations, and alterations omitted).

The Supreme Court has clarified that Title VII's administrative exhaustion requirement is

"not of jurisdictional cast," but, rather, "Title VII's charge-filing provisions speak to a party's

procedural obligations." *Id.* at 1850–51 (internal quotation marks, citations, and alterations

omitted); *see T. B. by & through Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1051 (5th Cir. 2020)

("We note, however, that the Supreme Court has recently held that Title VII's administrative

exhaustion requirement is not jurisdictional but is, instead, a mandatory claim-processing rule.")

(citing *Davis*, 139 S. Ct. at 1850–51). "But non-jurisdictional does not mean non-mandatory, and

administrative exhaustion remains 'a precondition to filing suit in district court.'" *Jordan v.*

*Ironworkers Local 263*, No. 4:21-CV-00715-O-BP, 2022 WL 161521, at *4 (N.D. Tex. Jan. 3,

2022), *report and recommendation adopted*, 2022 WL 160241 (N.D. Tex. Jan. 18, 2022) (quoting

*Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983)). "Thus, complaints

asserting unexhausted claims are properly dismissed for failure to state a claim under Rule

12(b)(6), rather than lack of jurisdiction under Rule 12(b)(1)." *Id.* (citing *Cruce*, 703 F.2d at 863).

Plaintiff alleges in his Amended Complaint that he was terminated on November 11, 2019.

(ECF 27 at 2). He also states:

> I filed with the EEOC the first week I was terminated and could not get an
> appointment in person or by phone. Everything was booked up thru January of
> 2020. I continuously got on the EEOC Portal and looked for bookings and could
> not ever find an open spot. I was finally contacted by an employeee [sic] of the
> EEOC and that was when they filed. It was within the 300 Day margin. The date
> that the last adverse action was taken against me was on January 16th, 2020, when
> I had my Level Three District Board Appeal. I will Attach the Letter with this
> amended complaint.

(*Id.* at 4). Plaintiff attached a copy of his EEOC charge to his Questionnaire, filed on June 29,

2021—prior to when the Court ordered Plaintiff to file an amended complaint. (*See* ECF 8 at 9–

11; ECF 26 at 1). Although not attached to Plaintiff's live complaint, the Court will consider the

EEOC charge as part of the pleadings for purposes of this motion to dismiss due to Plaintiff's *pro*

*se* status. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that courts must liberally

construe pleadings filed by *pro se* litigants); *In re Katrina Canal Breaches Litig.*, 495 F.3d at

205 (noting that pleadings in the Rule 12(b)(6) context include attachments to the complaint).

8

Defendant contends that Plaintiff failed to timely file his EEOC charge because Plaintiff filed his EEOC charge 332 days after he was terminated. (ECF 29 at 8–10). As noted by Defendant, the EEOC charge was filed on October 8, 2020. (*Id.* at 8; ECF 8 at 9–10). Plaintiff checked the box for discrimination based on sex and listed the dates of discrimination as occurring between August 29, 2019 and November 11, 2019. (ECF 8 at 9). Plaintiff wrote:

> I was discriminated against based on my Sex (Male) in that in that [sic] I was subjected to different terms and conditions than a female colleague, Penny Brown, regarding posting on social media during working hours. I was ultimately terminated on November 11, 2019, for a post during my personal time off the clock.

(*Id.*). It is undisputed that Plaintiff did not file a charge with the EEOC within 300 days of his termination. "However, filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 711 (5th Cir. 2011) (internal quotation marks and citation omitted).

Plaintiff argues the 300-day deadline should be calculated not as starting on the date of his termination but, rather, as beginning when "the last adverse was taken"—the date of "the School Board Level 3 Hearing that Occurred on January 16th, 2020." (ECF 34 at 1). Defendant contends that Plaintiff's equitable tolling argument fails, though. (ECF 29 at 10–11). The Court agrees.

Equitable tolling is only to be applied "sparingly." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113. "The plaintiff has the burden to provide justification for equitable tolling." *Granger*, 636 F.3d at 712. Three possible bases for equitable tolling include:

> (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights.

*Id.* (quoting *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995) (per curiam)). However, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period." *West v. Miss. Dep't of Public Safety*, 37 F. App'x 712, 712 (5th Cir. 2002) (per curium); *see also Buchanan v. CCA/Tallahatchie Cty. Corr. Facility*, 704 F. App'x 307, 308 (5th Cir. 2017) ("The mere pendency of her grievance, however, is an insufficient basis to find the district court abused its discretion in declining to apply equitable tolling."); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) ("[T]he internal union grievance procedure is not a basis [for equitable tolling] because the pendency of a grievance does not suspend the 180–day limitation for filing a charge."). Plaintiff has therefore not met his burden to provide justification for equitable tolling of his deadline to file an EEOC charge.

Accordingly, Plaintiff's sex discrimination claim is unexhausted because Plaintiff failed to file a charge of discrimination within the 300-day statutory time period, and that claim should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**2. Plaintiff Otherwise Fails to Establish a Claim for Sex Discrimination**

Assuming arguendo that equitable tolling applies and Plaintiff's sex discrimination claim is not time barred, Plaintiff's conclusory factual assertions are insufficient to plausibly allege that he was discriminated against and terminated based on his sex.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). A plaintiff may prove a claim of discrimination through direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d

551, 556 (5th Cir. 2007). Claims built on circumstantial evidence are analyzed under the

*McDonnell Douglas* framework. *Id.*; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973). Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of establishing

a prima facie case of sex discrimination. *McCoy*, 492 F.3d at 556–57. To establish a prima facie

case of discrimination, Plaintiff must show that he: "(1) is a member of a protected group; (2) was

qualified for the position at issue; (3) was discharged or suffered some adverse employment action

by the employer; and (4) was replaced by someone outside his protected group or was treated less

favorably than other similarly situated employees outside the protected group." *Morris v. Town of*

*Indep.*, 827 F.3d 396, 400 (5th Cir. 2016).

If he can make that showing, then the burden shifts to Defendant to articulate a legitimate,

nondiscriminatory reason for its employment action. *McCoy*, 492 F.3d at 557. "The employer's

burden is only one of production, not persuasion, and involves no credibility assessment." *Id*. If

Defendant meets its burden of production, then the burden shifts back to Plaintiff to raise a fact

issue regarding whether Defendant's "proffered reason is not true but instead is a pretext for the

real discriminatory . . . purpose." *Id.*

The Fifth Circuit uses a "modified *McDonnell Douglas* approach, which allows a "mixed-

motive" alternative to the pretext-based last step. Therefore, if Defendant meets its burden of

production, Plaintiff:

> must then offer sufficient evidence to create a genuine issue of material fact either
> (1) that the defendant's reason is not true, but is instead a pretext for discrimination
> (pretext alternative); or (2) that the defendant's reason, while true, is only one of
> the reasons for its conduct, and another motivating factor is the plaintiff's protected
> characteristic (mixed-motives alternative). If a plaintiff demonstrates that [a Title
> VII protected characteristic] was a motivating factor in the employment decision,
> it then falls to the defendant to prove that the same adverse employment decision
> would have been made regardless of discriminatory animus.

11

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004), *invalidated in part by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (precluding mixed-motive analysis in ADEA cases) (internal quotation marks, citations, and alteration omitted); *see Price v. Wheeler*, 834 F. App'x 849, 855 (5th Cir. 2020).

Here, Plaintiff has failed to show that he "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris*, 827 F.3d at 400. First, Plaintiff has not alleged that after he was terminated from his position as a maintenance worker for Defendant, he was replaced by a female. (*See* ECF 3; ECF 8; ECF 27). Second, Plaintiff has not shown that a similarly situated female employee was treated more favorably than him. The only female employee that Plaintiff identifies is Penny Brown—referred to at times as Penny Brown and at other times only as an unnamed "individual." Plaintiff alleges in his EEOC charge that he "was subjected to different terms and conditions than a female colleague, Penny Brown, regarding posting on social media during working hours." (ECF 8 at 9). Plaintiff asserts in his Amended Complaint that Ms. Brown was not reprimanded or terminated for posting on social media, doing a radio interview about the disappearance and death of Thomas Brown, discussing the issue on her cell phone while in her classroom, and "dress[ing] up as the person she believed had involvement in" Thomas Brown's disappearance. (ECF 27 at 2–3).

To satisfy the fourth element, a plaintiff "must establish that the comparator was treated more favorably than the plaintiff under nearly identical circumstances." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 340 (5th Cir. 2021) (quoting *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 410 (5th Cir. 2016)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or

responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

Plaintiff fails to establish that Penny Brown was a similarly situated comparator. Aside from both being employees of Defendant—Plaintiff as a maintenance worker for the school district and Penny Brown as a teacher—Plaintiff has not alleged that he and Penny Brown were similarly situated in any way. (*See* ECF 3; ECF 8; ECF 27). Additionally, as noted by Defendant: "Ms. Brown is the mother of the deceased child, Thomas Brown." (ECF 29 at 14). "To the extent Ms. Brown did make public comments about the investigation concerning her own deceased child, [Ms.] Brown's conduct would bear no resemblance or similarity to the potentially defamatory conduct engaged in by Plaintiff, a disinterested individual with no known connection to the Thomas Brown investigation." (*Id.*).

As such, Plaintiff has failed to establish a *prima facie* case of sex discrimination, and, if his claim is not dismissed as time barred, Plaintiff's claim should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**B. Plaintiff's First Amendment Claim Should Be Dismissed**

Plaintiff also asserts that Defendant violated his First Amendment rights. (ECF 27 at 2–5). He argues that his "1st Amendment rights were sieged upon, due to Plaintiff's post [that] was made at 10:30 P.M. Under the Texas Constitution and Bill of Rights, any individual is allowed to comment on any subject as so long as is [sic] doesn't include Slander or Libel, which is amended under the UNITED STATES CONSTITUTION and BILL OF RIGHTS." (ECF 34 at 1–2).

As an employee of a school district, Plaintiff was a public employee. "To determine whether the public employee's speech is entitled to protection, courts must engage in a two-step

inquiry." *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015) (citing *Lane v. Franks*, 573 U.S. 228, 237 (2014). "The first step requires determining whether the employee spoke as a citizen on a matter of public concern." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "If the employee has spoken as a citizen on a matter of public concern, then a First Amendment claim may arise." *Id.* "The second step of the inquiry requires determining 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'" *Id.* (quoting *Garcetti*, 547 U.S. at 418). This is commonly referred to as the *Pickering-Connick* test. *See Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Bd. of Ed.*, 391 U.S. 563 (1968).

Defendant contends that Plaintiff's First Amendment claim must fail because Plaintiff cannot succeed on the second element of the *Pickering-Connick* test. (ECF 29 at 16). When considering the second element, the Court must strike a balance between "the interests of [Plaintiff], as a citizen, in commenting upon matters of public concern and the interest of [Defendant], as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. "When performing this balancing test, courts consider 'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary[.]'" *Graziosi*, 775 F.3d at 740 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).

Defendant asserts that, as a public school district, it:

has a clear interest in (1) maintaining harmony among its co-workers, (2) guarding close working relationships for which personal loyalty and confidence are necessary (not just relationships among co-workers, but also relationships between students/families and [Defendant's] employees), and (3) ensuring normal operations in the provision of the District's educational services.

(ECF 29 at 16). Defendant argues that Plaintiff's social media posts were: "clearly designed to raise public suspicion about Ms. Brown and her husband and thus were intentionally designed to damage the reputations of Ms. Brown and her family"; "speculative and based on no ascertainable evidence"; and "highly likely to cause substantial disharmony among [Defendant's] workforce and raise suspicion and mistrust directed toward Ms. Brown by coworkers, students, and parents, which would substantially and detrimentally affect [Defendant's] ability to conduct normal operations." (*Id.* at 16–17).

The Court agrees with Defendant. Plaintiff cannot plausibly establish that his own interests in publicly commenting on Thomas Brown's disappearance and casting suspicion that he was murdered by one of Defendant's employees—his own mother, Penny Brown—and her husband outweighed Defendant's legitimate interests in promoting harmony amongst its employees, close working relationships within the district, and the continued operations of its educational services. *See Rankin*, 483 U.S. at 388; *Graziosi*, 775 F.3d at 740. Accordingly, Plaintiff's First Amendment claim should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### C. Plaintiff Has Presented His Best Case, So Leave to Amend Should Be Denied

"When a court dismisses a plaintiff's claims under Rule 12(b)(6), it generally should give the plaintiff at least one opportunity to amend the complaint." *Lyons v. Starbucks Coffee Co.*, No. 3:19-CV-2457-S-BT, 2020 WL 5732638, at *4 (N.D. Tex. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5710245 (N.D. Tex. Sept. 24, 2020) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)). Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). However, "[t]he court may deny leave to amend . . . if the defects are incurable

or the plaintiffs have already alleged their best case." *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam).

Plaintiff has had multiple opportunities to present his factual allegations and legal arguments, including in his original Complaint (ECF 3), Questionnaire (ECF 8), Motion to Retain Case on Docket and Notice of Hearing (ECF 18), and Amended Complaint (ECF 27). As Defendant notes, "[w]hen drafting his Amended Complaint, Plaintiff had the benefit of Defendant's previously filed Motion to Dismiss, which set forth in detail the very issues Plaintiff would need to plead to survive a subsequent motion to dismiss." (ECF 29 at 17–18). As such, Plaintiff has presented his "best case" as to both his gender discrimination claim and First Amendment claim. *See Pierce*, 600 F. App'x at 200. The United States District Judge should thus dismiss Plaintiff's Amended Complaint with prejudice.

**D. The Court Should Deny the Motion for Joinder of Parties by Plaintiff as Moot**

Several weeks after Defendant filed its Motion to Dismiss Amended Complaint, Plaintiff filed a motion for joinder of parties. (*See* ECF 37 – ECF 41). By that motion, Plaintiff seeks to add his wife and daughter as plaintiffs in this lawsuit. (ECF 37 at 1). Plaintiff claims that his daughter "has pain and suffering, emotion [sic] distress, and mental anguish" caused by Defendant's alleged sex discrimination and First Amendment violations. (*Id.* at 2). Plaintiff also makes vague allegations regarding conduct and actions of some non-parties related to his daughter being taken into custody for potentially criminal conduct while at school. (*Id.* at 2–3). He alleges "mistreatment" of his daughter by Defendant regarding the Sherriff's Department's investigation into his daughter. (*Id.* at 2). Plaintiff does not specifically discuss his wife in the motion, other than to identify Ashley Boyd as his spouse. (*Id.* at 2–3).

Because the undersigned recommends dismissal of Plaintiff's Amended Complaint with prejudice, the Court recommends that the Motion for Joinder of Parties by Plaintiff be denied as moot.

## IV.    RECOMMENDATION

For the reasons above, the United States Magistrate Judge RECOMMENDS to the United States District Judge that Defendant's Motion to Dismiss Amended Complaint (ECF 28) be GRANTED and that the Motion for Joinder of Parties by Plaintiff (ECF 37) be DENIED as moot.

## V.    INSTRUCTION FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED February 17, 2022.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc),

17

*superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).